# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

HORIZON AMERICAS INC., )
 )
                Plaintiff, ) **CIVIL ACTION**
 )
v. ) No.  03-1071-MLB
 )
CESSNA AIRCRAFT COMPANY, )
 )
                Defendant. )
 )

## MEMORANDUM AND ORDER

Before the court are the following:

1. Cessna Aircraft Company's motion to exclude testimony of Robert Agnew (Docs. 106 and 107);

2. Horizon Americas' response (Doc. 119); and

3. Cessna's reply (Doc. 132).

According to the pretrial order, this case involves claims for breach of contract and/or breach of warranties and revocation of acceptance, and arises out of alleged defects in a Citation X business jet airplane manufactured by Cessna and sold to Horizon. The aircraft came with a warranty, which is hardly surprising since the sale price was almost 17 million dollars. The warranty covered the aircraft, except for the engines. Horizon claims that shortly after the Citation X was delivered in April 1999, it began experiencing various mechanical failures and defects which Cessna has been unable to successfully correct. Eventually, in 2003, Horizon revoked its acceptance of the Citation X, tendered the aircraft to Cessna and demanded repayment of the purchase price.

Cessna denies that the Citation X was or is defective and that

it breached any warranties. Cessna asserts that by the time Horizon tried to revoke its acceptance of the Citation X, its condition had deteriorated and the aircraft was not worth any where near its original price.

Horizon hired an expert, Robert Agnew, who has prepared two written reports setting forth his opinions regarding the value of the Citation X at the time of delivery in 1999 and then in the Spring of 2003, when Horizon sought to revoke acceptance. (Doc. 106, exhs. A and B). Agnew was extensively deposed in June 2005. By its motion, Cessna seeks to exclude Agnew's opinions. In reaching its decision on Cessna's motion to exclude Agnew's opinions, the court has considered Fed. R. Evid. 403, 702 and 703, Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) and applicable Tenth Circuit decisions. On May 8, the court took testimony of Agnew as contemplated by Goebel v. Denver and Rio Grande Western Railroad Company, 215 F.3d 1083, 1087 (10th Cir. 2000) and Tuato v. Brown, 85 Fed. Appx. 674, 2003 WL 23032371 (10th Cir. Dec. 30, 2003).

"Rule 702 sets forth the standard for admission of expert testimony," U.S. v. Fredette, 315 F.3d 1235, 1239 (10th Cir. 2003), and assigns "to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharm., 509 U.S. 579, 597, 113 S. Ct. 2786, 2799, 125 L. Ed. 2d 469 (1993). Rule 702 provides that

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness

-2-

> qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The standards embraced by Rule 702 and Daubert apply equally to scientific testimony and other testimony of a technical nature. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-48 , 119 S. Ct. 1167, 1174, 143 L. Ed. 2d 238 (1999).

Agnew is the president of an aviation consulting firm, Morten Beyer & Agnew, Inc. (MBA). Agnew has over thirty years experience in the aviation field. Agnew is certified as an appraiser by the International Society of Transport Aircraft Traders (ISTAT). Before entering the consulting world, Agnew worked for private airline companies and spent time as an Air Force officer and navigator with the Strategic Air Command. Agnew has opined that the Citation X, as warranted by Cessna, had a market value of $16,499,050 in May 1999. Agnew has also opined that the value of the Citation X, as delivered, had a salvage value of $5,370,000 in May 1999. Agnew estimated the aircraft's salvage value in March and June 2003, to be $4,190,000 and $4,160,000, respectively. Significantly, Cessna does not challenge Agnew's qualifications. Nor does Cessna dispute Agnew's opinion regarding market value.

Cessna puts forth two main objections to Agnew's testimony. Its first objection can be disposed of summarily. Cessna asserts that Agnew's testimony should be excluded because he relied on Nicholas Lacey's expert report, which Cessna argues is unreliable. Agnew relied on Lacey's report to determine the condition of the aircraft.

Agnew testified that he also relied on Lacey's report in determining that the aircraft could not be sold on the open market since Lacey would not fly the aircraft due to safety concerns. Cessna's motion to exclude Lacey's opinions on the type and extent of defects on the Citation X was denied. (Doc. 142). However, the court excluded the following opinions of Lacey: "I believe this loss of confidence in the aircraft is justified and that Cessna's inability to repair the aircraft resulted in frustration of loss of confidence in the product;" owners relied on Cessna to isolate defects and make repairs; and that the Citation X owned by Horizon was not as reliable as Cessna represented, not as reliable as a reasonable purchaser would expect and not as reliable as most of the Citation X fleet. (Doc. 142 at 3). To the extent that the court allowed Lacey's opinions to stand, Agnew may rely on them. To the extent they were excluded, Agnew may not. Fed. R. Evid. 703.

Accordingly, Cessna's motion to exclude the entirety of Agnew's testimony on the basis that Lacey's opinion is unreliable is denied.

Cessna also contends that Agnew's testimony should be excluded as unreliable because it is based, to some extent, on market survey information that Agnew or his associate received from "confidential sources" in the industry, i.e. persons in the industry who would agree to offer information regarding value of the aircraft and its parts but only on condition of anonymity. Agnew testified that this practice of "calling around" to obtain aircraft values is accepted procedure in the industry. Cessna offered no evidence to refute this testimony.

In valuing the aircraft, Agnew initially determined whether to classify the aircraft as distressed or salvage. In making this

determination, Agnew relied upon Lacey's report, Count Claudio Thyssen's deposition[1], and the deposition of the underpilot, Angel. The testimony of these individuals included opinions that the aircraft was experiencing a lot problems that were not being repaired and that the aircraft was unsafe.  Agnew also contacted two brokers who deal in Citation X's and relayed the problems that Lacey had documented. Both brokers stated that the aircraft would not be marketable and they would not list it for sale.  Based on this information, Agnew determined that the aircraft would have a salvage value and could not be sold at a distressed value.[2]  Salvage value is the value of the aircraft's parts and components that can be salvaged for reuse on other aircraft.

In order to determine the salvage value, Agnew had to estimate the price of individual parts that would be sold. Steve Rehrmann, Agnew's associate who is also an ISTAT appraiser, assisted in determining the value of the aircraft's parts.  Among other things, Rehrmann conducted interviews with six confidential sources who deal in parts.  Agnew testified that ISTAT approves this method which has been employed since 1991, when information on sales of certain types of aircraft and parts was no longer available to the public. Therefore, appraisers must contact confidential sources to determine the current market value for the specific aircraft or part.  Agnew

---

[1] Count Claudio Thyssen is the owner of Horizon and the pilot of the aircraft and frequently used it for travel.

[2] Had the airplane been marketable for sale, Agnew determined that the distressed value would be in a range of 13.38 to 10.71 million in 2003, depending on the number of Citation X's available for sale and the number of prospective buyers at the time.

testified that to his knowledge all appraisers make their final determination by utilizing this method. Again, this testimony was not challenged or refuted.

In assessing reliability under Daubert the purpose of the inquiry is always the same: "[t]o make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at 152, 119 S. Ct. 1167.  While the method may be one that is not understood by a layperson, if the method is the same utilized by all other appraisers then it is reliable.  See Ramsey v. Culpepper, 738 F.2d 1092, 1101 (10th Cir. 1984).  In Ramsey, the defendant objected to the expert's use of figures of comparable buildings performed by another appraiser.  The Tenth Circuit held that these objections went to the weight of the testimony and not to its admissibility since an expert "may rely on facts outside the record and not personally observed, but of the kind that experts in his or her field reasonably rely in forming opinions." Id.

In the event this case goes to trial, the jury will have to make decisions regarding damages.  See PIK 3d Civil 129.16 and 128.13. Obviously, the value of a used Cessna Citation X is beyond the knowledge and expertise of the average juror.  Indeed, it's probably beyond the knowledge and expertise of any juror likely to be seated in this case.  Expert testimony regarding value, as well as the aircraft's condition and problems, presumably will be offered by Cessna as well as by Horizon.  The methodology to be used by Cessna's expert(s) regarding value is unknown.  Agnew's methodology seems

somewhat unorthodox, primarily due to its reliance on confidential sources, but in the absence of evidence that it is unique to him or not recognized in the industry, the court cannot say it is unreliable. The jury may, or may not, accept his testimony but that is a matter of weight and credibility, not admissibility.

Based on Agnew's unchallenged experience, the court finds that Agnew is qualified as an expert to give an opinion as to the value of the Citation X. His testimony will be helpful to the jury, is based on a facially reliable foundation and is clearly relevant. Cessna's motion to exclude Agnew's testimony is denied.

IT IS SO ORDERED.

Dated this ___18th___ day of May 2006, at Wichita, Kansas.

                                        s/ Monti Belot
                                        Monti L. Belot
                                        UNITED STATES DISTRICT JUDGE